The clerk now calls 116023, 116163, 116190, Consolidated, Angelo Consiglio, M.D. et al., Appellees v. Department of Financial and Professional Regulation et al., Appellees, Bradley Hayashi, D.C. et al., Appellants. Are the parties ready to proceed? You may proceed. We're going to have counsel for a comparator to just weigh up the washrooms on the U.S. Capitol. Thank you. Proceed. May it please the Court, my name is Bill Coughlin, I represent Dr. Mohammed Kalaluddin in these proceedings. I'd like to devote the majority of my time to the applicability of the doctrine of res judicata to the facts as they apply to Dr. Kalaluddin. Briefly, the facts are that in 1998, the Department, as a result of allegations of inappropriate conduct with female patients, suspended the license of Dr. Kalaluddin. Ultimately, he was charged with misdemeanor batteries, convicted of four misdemeanor batteries, placed on probation for one year. After his license had been suspended for approximately three years, the Department issued an order restoring that license, placing it on probation, and subjecting it to various terms and conditions, including a chaperone for all examination of female patients, as well as a payment of a fine to the Department in the amount of $30,000. After complying with all of the terms and the passage of six years, and after a full evidentiary hearing before the Department, an order was issued, finding that he had resumed the trust of the State and was fit to resume the unencumbered full practice of medicine in the State of Illinois. The subject legislation now requires the same Department to revoke the same license based on the same criminal convictions which were previously adjudicated by these defendants. I respectfully submit that the ruling of this Supreme Court in the case of People-X-Rail-Allied-Bridge v. McKibben is controlling on this doctrine and issue. The Court in the Allied held that rights which arise under statute that have been decreed by a court of competent jurisdiction become vested and cannot be affected by subsequent legislation. That case concerned tax credit memorandums which were afforded under a statute. There was a decree entered allowing the petitioners in that case the right to transfer those tax credits. The law changed saying prohibiting the transfer of tax credits. The State refused to acknowledge or allow the transferring of those tax credits. Litigation that followed said no, their right to transfer those credits is vested and thus, despite the change of the law, they have that right. This case, I submit, is precisely the same principle, basically the same procedural facts. The Appellate Court did not address the Allied construction case and the Department briefly discusses it and basically dismisses it saying that Dr. Calhoun does not have a vested right. We've already explained that in our brief about constitutional retroactive legislation. His right is invested. The property right to a professional license is invested. That argument completely misapprehends the ruling in Allied. It is the judicial decree in the prior case that vests the right. They vested the right to assign tax memorandums. They have vested Dr. Calhoun's right to practice medicine in the State of Illinois. Isn't one of the matters a civil matter and the other a criminal matter? No. Both are administrative matters. It is the Department that administratively, per statute, suspended, restored, and ultimately placed his license back in full active status. But the act that the doctor was convicted of, criminal? It was misdemeanor, misdemeanor bad. But it still was a criminal matter and versus the civil matter that the Department of Registration is. The Department's action was based on the criminal conviction. Yes. But nothing civil involved in this case as it relates to Dr. Calhoun. The actions that are being taken in this case and were taken in the prior case were administrative pursuant to statute. They are both based on the criminal convictions. There is nothing different except we have a new statute. And the law in Allied is very clear. While it has been held that there generally is no vested right in a public law, yet when, as here, rights which arise under a statute are decreed by a court of competent jurisdiction, the rights decreed are vested. Subsequent legislation cannot affect such rights. This legislation is eliminating that right. Well, then, is there a conflict between 2105-165, which requires the Department to permanently revoke the license due to conviction for certain offenses, and Section 22A20 of the Medical Practice Act, which grants the Department the discretionary power to revoke a license for commission of an act of sexual misconduct? Is there a conflict between those two? They're different. One requires a revocation. The other did not. The act as it existed when the prior decree was entered gave the Department subjective discretion. They exercised it. My client relied on it. Served a substantial suspension. Paid a substantial fine. Six years of probation. Full evidentiary hearing. You are fit to practice medicine. That right, I submit, is vested. The cases that the Department relied on basically are cases where there's been a change in the law or a change of circumstances, and I suggest that they are quite easily distinguished. Neither of those cases involved the initial case adjudicating statutory rights. The first case I'll address is Bernstein. Bernstein involved a plaintiff's son's right to receive electric shock therapy. The Bernstein court acknowledged the Allied decision and said, unlike in Allied, the court in Bernstein did not say that the son had a perpetual right to electric shock therapy. In fact, the consent order reached in Bernstein was riddled with exceptions, a treatment of plan, future review. There was nothing in that prior case that locked his right to that therapy, as the court phrased, in perpetuity. Mr. Coggan, you argued earlier that it was a vested right. As defined by the Allied court. Well, doesn't the Allied bridge and construction company case say that as to retroactivity, care worker has no vested right and is licensed because a license is subject to ongoing regulation and legislation? I'm sorry. Doesn't Allied say that? Allied has nothing to do with a license. Allied is tax memorandums that were issued to entities pursuant to a statutory regulation. They went to court because there was a conflict whether they were. But the issue there is the ongoing subject to regulation, just as in this situation. Doctors are always going to be subject to ongoing regulations. Absolutely. And legislation. I don't disagree with that. But what Allied says in a nutshell is if you have a right that is statutorily based and there's a decree on that right, that's a vested right. Forever? Yes, forever. So the doctor is no longer subject to future legislation and regulation? Based on his criminal convictions, he is not. That right vis-a-vis his criminal misdemeanors has been adjudicated, and it is vested. So there's no, we can't look at this as a new eligibility requirement? You can as it relates to other applicants or other licensees, but not as to Dr. Calhoun. So there's nothing that the state of Illinois can do to prevent all convicted sex offenders from practicing medicine in Illinois? Well, let me be clear. Dr. Calhoun had simple misdemeanor battery. He's not a sex offender as defined by this state. He's never had to register as a sex offender. That term is thrown out throughout the briefs. My client is not a sex offender. So that's number one. Number two, they can certainly take appropriate action with sex offenders. They've done it with the facts of my case, this state has taken action. They suspended his license for three years. They put him on probation for six years. They held a hearing and determined the remedial steps you have taken warrant you to return to the practice of medicine. That's done as it relates to these criminal convictions. Now they're saying same criminal convictions. There's no dispute that they're using the same criminal convictions, same parties, but now we're revoking it because the law says we can. Allied says subsequent legislation cannot affect that right. Simple as that. Mr. Coughlin, what about the present perfect tense of the statute has been? I'm not arguing retroactivity, Judge. I'm arguing vested right, res judicata is the principle I'm here on. Vested right, previously adjudicated, same parties, nothing's changed except there's a new law that says we're going to take what we did before and use it as a permanent revocation. There are a couple cases the defendants have cited where they say that the doctrine of res judicata will not be applied if to do so would be unfair. I submit not applying the doctrine to the facts of Dr. Calhoun's case would be abjectly unfair. As most of these cases state, the doctrine should be applied as fairness and justice requires. That's this case. My office was going to cover ex post facto. Time limits me to rest on the briefs. A look at the legislative comments will show that their purpose was to make sure sex offenders, that's the term that's used in the comments repeatedly, which is not my client, don't get to practice medicine. That's the purpose of this act. It's punitive in nature. When you analyze it under the Kennedy versus Mendota statute, at least five of the seven factors favor a conclusion that this act is punitive in nature and therefore should not be applied to my client and the others. Thank you. May it please the court, counsel, my name is Catherine Stolmack and I'm here on behalf of Dr. Nursi Jafari. By permitting defendants to revoke Dr. Jafari's medical license 15 years after a 1999 incident, this court would effectively allow the department to revive a dead, time-barred claim and unconstitutionally infringe on Dr. Jafari and others' right to due process. Dr. Jafari's vested right to a time defense allowed by this court would essentially be rendered meaningless. But on July 21st, back in 2011, that's exactly what the legislature tried to do when it codified 20 ILCS 2105 slash 2105-165 that violated his right and effectively changed the lives of hundreds of healthcare workers in the state of Illinois. The amendment made a profound change to the healthcare worker licensing system by requiring the automatic and permanent revocation of a medical license. Now, the department's power to revoke, suspend, or otherwise discipline a healthcare worker's license is not without limitation. Specifically, the Medical Practice Act provides a mandatory, this is back in 1999, a mandatory three-year limitations period and a five-year repose period related to Dr. Jafari's 1999 incident and 2001 misdemeanor. Defendants have never disputed that because they can't. That these limitations have expired. That's not an issue before this court. Because these limitations have lapsed, however. Excuse me, but weren't the plaintiff's licenses not revoked under that situation because they weren't revoked pursuant to the Medical Practice Act, but rather the professional regulation law? And that's an excellent question, Your Honor. And the appellate court also seemed to recognize that the time by which Dr. Jafari's license has run had lapsed, so everyone acknowledged it. In my mind, it illogically concluded that simply because it occurred, or at least the statute occurred in a separate amendment, that it did not apply to Dr. Jafari. And I submit to this court that that reasoning is illogical. It shakes the core of the fundamental principles of the statute of limitation and statute of repose. And it also violates the law. So the law surrounding the statute of limitation and repose period has been well established. So you're agreeing that the time bar defenses on which the plaintiffs have relied have no applicable, they don't apply to the revocation proceedings? I disagree with that. They are not contained within the new amendment. I agree with you on that point. But they absolutely have applicability. They have applicability because the amendment, if applied to Dr. Jafari, interferes with this vested right to a time defense. The concept of the statute of limitation is not nullified simply because we create new legislation that is separate and independent in a different statute. That's absolutely not the case. Here, Dr. Jafari's right vested. It became a vested right that's free from legislature interference. That's what this court has held. So the mere fact we create a subsequent statute that doesn't have a limitations period has no bearing with respect to whether the statute of limitation applies. Rather, its primary focus is let's look at the limitation period outlined in the Medical Practice Act. What's its purpose? What's the reason for a three and five-year limitation? Its purpose is to provide the predictability and the finality that physicians expect. That's free from interference. That right vested. That's a vested right that brings me into. And that's what the law says. In fact, if you look at Blodgett, it says the law surrounding the statute of limitations and repose period, it has well been established that upon its expiration, it cannot be taken away by legislation or any affirmative act. Any affirmative act. An affirmative act would fall squarely within this new amendment which impairs Dr. Jafari's vested right, that right to finality. That's the purpose. And that's what plaintiff is arguing. It brings me to my second point. Because Dr. Jafari has a vested right to a time defense, this amendment cannot be applied retroactively. And that gets into a rather complex argument that I would like to explore with the Court. Because defendants creatively say, and I commend them because they actually cite a litany of case law that stands for the proposition that, you know, the legislator can create additional licensing requirements, right? They can add, require us to take additional examinations. They can do it of lawyers, doctors. Simply because you're a licensed physician does not mean you are without the right to have these additional requirements placed on your license. This is the main distinction. You cannot do it. You can't do it if it interferes with a vested property right. I'd like to explain to me again, though, because this matter comes under the professional regulation law, which does not contain the statute of limitations. And so I would like you to speak to that. And that's an excellent question. As opposed to the Medical Practice Act, which you're discussing. Sure. And I'm going to say it again because it's confusing. The Medical Practice Act is the act which created Dr. Jafari's vested right, not the new amendment. Okay? Dr. Jafari had a vested property right that started in 2004 once the repose period ended. That right can't be taken away by any legislation, whether it appears in a criminal code, a civil code, whether it appears by a subsequent amendment in the same code. That right vested. Now, simply because this is in a separate law, and this is what the Court in Blodgett held as well, simply because it appears in a separate law does not take away a vested right. Because think of the consequences. Think about the big picture of this. Let's say from a criminal matter we have a rape case. And we have a separate statute that's, you know, I believe, and I'm not a criminal lawyer, so please forgive me if I misquote this. But let's say we have the expiration of a seven-year statute of limitations, but we create something in the civil code that says, you know what? Let's say we find DNA evidence after that statute of limitations period has run. What do we do then? Well, let's create a separate act. Let's say, you know, if we have 100 percent proof that here we have that ability to, that ability to, so to speak, unring the bell. We know who the perpetrator is. We can prove with 100 percent. But that criminal's right vested at the expiration of that statute of limitations period. Whatever law the legislature subsequently creates, I submit to you no matter where it is, no matter where it is contained in any law, that is a vested right that this Court established. Mr. Stolmach? What about the appellate court's point that a retroactive application of the statute would mean holding the plaintiffs who are unlawfully practicing medicine without a license before the statute's effective date? What about that point? They're saying retroactive application would say, all right, now you were holding that license prior to that date, and as a result of that, you were unlawfully practicing medicine during that period. That's not what they're saying, right? Okay. It's only from the point of the statute forward. Okay. So what about that point? And is that point? I think that point is saying that it's not, it's disputing your point, obviously, that this is retroactive application. Saying retroactive application would be as if during that period, prior to the statute's effective date, that they would be deemed having been unlawfully practicing medicine. That's not what the statute says. It says from this point forward, sex offenders can't practice medicine. And I think that's an excellent question, Judge, because the defendants are arguing that this is merely a prospective application based on antecedent events. That's what the defendants are arguing. Essentially, that's what the appellate court held. There's one big glaring omission from that as to why that reasoning fails. Because this Court, it held it in Landgraf. This Court has said that a law has a retroactive effect if three things are true. And that's why, while a good question, we can't rely on the appellate court's determination because they never looked at this. If it does any of the following, the law has a retroactive effect, period. If it attaches new legal consequences to events before its enactment, if it takes away or impairs vested rights acquired under existing laws, acquired under existing laws, or impairs a rights a party possessed when he acted. That's why this has a retroactive effect. That's why the argument that this is merely a prospective application based on antecedent events fails. And, in fact, if you look at the case law submitted by the defendants, and, you know, none of these cases, and this is critical, none of those cases deal with the statute of limitations. And even more importantly, none of those cases deal with a vested property right that is free, that must be free from legislation. And let's be right there for one minute. Yes. I want to let you keep going. Yeah, no, please. Very specifically, what is the vested right that you are talking about? I think you just tell us it's a vested right in a license. Earlier you said it was a vested right in the time period. You may be making a due process argument. What specifically can you define for us is the vested right? There is no vested right. Dr. Jafari does not have a vested right in his medical license. So the vested right is his right to claim a time defense. If you look at the Supreme Court decision, they recognize, and that's important, and I don't think anyone has understood this previously, and the vested right to a time defense creates, occurred under the Medical Practice Act. It's a property right. It's a property right established by the Supreme Court, held by the Supreme That's a property right. Correct. That is free from legislation of interference and is outlined in the case law, actually, by this court. So I asked your co-counsel, there's nothing the state can do to prevent all convicted sex offenders from practicing medicine in Illinois? I am not saying that the legislature cannot provide restrictions on sex offenders' licenses going forward. I'm simply, or, you know, frankly, I submit to this court, if this, if the legislature Going forward, the answer to the question would be no. There was nothing they could do for all convicted sex offenders from practicing medicine in the state of Illinois. I submit to this court that the legislature cannot prohibit any offender who is a licensed physician in the state of Illinois, whether it falls under any of the four enumerated convictions in 2105-165, if it interferes with his vested right to due process. However And you don't do, I'm sorry It can't do it. You do not dispute that that is exactly what the legislature was intending to do  Looking at Kirk Dillard, Senator Dillard's comments, the way that legislation was written, they could have very easily written it on or after the statute's effective date. That isn't what they did. We probably, your client wouldn't be here if that's what they did. My, I believe that if we look to statutory aids of construction, and if we set aside Landgraf and what Landgraf requires, which is the clear unequivocal expression of intent on the face of the statute, which this statute does not have, if I were to take away what the law requires in terms of intent on the face of the statute, and from a personal perspective, did they want to bar all, you know, frankly, I would be dishonest if I said no. Most likely if we, you know, they would probably have liked this to apply to everyone. But it's not on the face of the statute. And that's the requirement. And moreover, let's say even if it was on the statute, and this is really important, let's say this, let's say the legislature said, we intend this to apply to everyone. Those physicians who have been convicted in the future and have been convicted in the past. It still can't. But Ms. Dorn, I think the Court has already stated in Rios v. Jones that the boundaries as part of its power to protect the health and safety of its citizens. And it may affect licensing as necessary in furtherance of those interests. How do you deal with that case, Rios v. Jones? Because it can't do so. Rios v. Jones did not deal with a vested property right. That's a huge distinction. I'm not in disagreement with Rios v. Jones. The problem with that line of case law is none of the cases cited by the defendants dealt with a vested property right. And it's universal across the board. It bars this, you know, it bars the legislature from applying this statute from Dr. Jafari and others when there's a vested right to a time defense. It can't, you cannot substantially interfere and impair rights when that right has vested. And that's what the key distinction is. Because you can add additional licensing requirements. Certainly the legislature is allowed to do anything that arguably is in the public's best interest to protect the safety. That's not what Dr. Jafari is arguing here. And I really want to make that clear. Our argument, along with other plaintiffs who have this vested right to a time defense, is that under no circumstances can the legislature create any law, regardless of whether it's to protect the public or whatever reason whatsoever, that law cannot interfere with a vested right. I understand what I believe to be the crux of your argument. But did you say in passing that you don't think that the language of the statute is plain and clear that it involves every sex offender? I do not. I do not, under Landgraf, I do not believe it unequivocally states the intent. And if you look at the language, the litany of case law That all goes to your retroactive application. But what about the clear language, has been convicted of a criminal act, has been convicted of a criminal battery, has been convicted of a forcible event? That's the only grammatical language that makes sense. That's the triggering event. That does not go to, so for example, there's really no, if you look at the plain language, and we're going to get, we can certainly get into this argument. If you look at the plain language, has been convicted, is a requirement, it's the triggering event, if you look at it very carefully, in which the statute provides DPR with the authority to revoke a license. I submit to this Court, it speaks to nothing with respect to retroactivity. It's merely grammatically correct. As you indicated earlier, it clearly does not say honor after the statute's effective date, which the legislature knows how to do. Absolutely. Right. Okay. Thank you. Dennis Doherty, on behalf of Plaintiff Hayashi. It is my extreme honor to be before the Chief Justice and Justices of the Illinois Supreme Court. This law is unconstitutional and violates procedural due process because it mandates permanent revocation without a hearing. The state argues that no hearing is required because they only need to show a licensed healthcare worker was convicted of, quote, a listed crime. Four triggering sections are in this law. Two are sex offender registration. One is forcible felony. But Section 82 states, quote, has been convicted of a criminal battery against any patient in the course of patient care or treatment, including any offense based on sexual conduct or sexual penetration. There is no such crime in Illinois as battery of a patient during the course or in the course of patient care or treatment. There is only a crime listed as battery. So there are questions of fact in this statutory scheme. Whether a person is a patient is a question of fact. Whether a battery occurred in the course of patient care or treatment is a question of fact. It would not be fair to let the state unilaterally decide these questions of fact. What if a patient is screaming, shouting obscenities in the lobby of a clinic and a healthcare worker punches them? Is that a battery during the course of patient care or treatment? But who decides? Mr. Doherty, was your client convicted of any criminal charges? Indeed. He was found guilty of battery. Okay. In a bench trial where the complainant testified, he testified. So under the enumerated basis for challenging a revocation are that the one, the criminal charges have been dropped. Has that happened? No. Two, that the licensee has not been convicted of the charges. Has that occurred? He was convicted, right? Yes. And three, that the conviction has been vacated, overturned, or reversed. Has that happened? No. Those are the only three enumerated opportunities to challenge the revocation. That is exactly the unconstitutionality of the statute. It does not allow for a hearing. And it's facially unconstitutional and violates procedural due process. But there was a hearing at the trial, right? There was a trial. And was that due process? Indeed. Indeed. But that does not, the statutory scheme here provides for questions of fact. And the terms are not defined in the statutory scheme. Who is a patient and whether a battery occurred in the course of patient care and treatment. That's not a listed crime. Those are questions of fact. And it's unfair to prohibit the health care worker from disputing and participating in the resolutions of any questions of fact. The clearest two decisions controlling, in my humble opinion, Your Honors, Connecticut v. Dole, 538 U.S. 1. In that case, the court stated, quote, and it's 538 U.S. 8, plaintiffs who assert a right to a hearing under the due process clause must show that the facts they seek to establish in a hearing are relevant under the statutory scheme. And no hearing is required there. That was a sex offender registration case. But cited within Dole, and the continuing vitality is clear, is Goss v. Lopez, 419 U.S. 565, where the court stated the state cannot unilaterally decide questions of fact. That was a student misconduct case. If there are facts that have to be decided, the agreed party should be allowed to participate. And that is the unconstitutionality of the statutory scheme. As applied, I'm not arguing as applied. There's no record. This was a complaint dismissed. As applied, an application argument would require a record and a hearing. Counsel, do we have to, does your argument fall if we don't find the right to practice medicine as a vested right in the first instance? It is definitely a vested right. In the Smith case, Your Honors, this court. I know that's your position. I'm just asking, does it have to be a vested right for procedural due process to be at issue? No, not at all. The people affected by this are not just doctors, licensed health care workers. We have oxypuncturists and many others licensed. They have vested rights. But it does not require it. Let me just ask you a question based on Justice Burke's question. Is the risk that a license will be erroneously revoked low? Does that enter into it because it's based on a criminal conviction? Does that enter into our due process analysis at all? I don't think it is low. Battery prosecutions take place throughout this county on a multiple basis. And if there are questions of fact in the statutory scheme, the state cannot decide those questions of fact. It doesn't just say convicted of battery. If the statute said convicted of battery, then there may or may not be a procedural due process problem with that. But it says convicted of battery of a patient in the course of patient care or treatment. There's no such crime. There's not a list of crime. What process is lacking? The cases say post-revocation hearings are constitutional. Thank you very much, Your Honors. Thank you, Counsel. Counsel to the appellee. Good morning, Your Honors. And may it please the Court. Assistant Attorney General Nadine Wickern on behalf of the defendants' appellees. Your Honors, regarding the claim that Section 2105.165a is retroactive, as we explained in our brief and as the appellate court noted, the plaintiff's argument proceeds from a mistaken premise. We are in 100% agreement that the statute applies only prospectively. It does not apply retroactively. And in effect, the statute creates new eligibility requirements for holding a license in the state of Illinois after August 20, 2011. Indeed, after that date, anyone who has been convicted of any of the listed crimes, including a sex offense or a battery against a patient in the course of treatment, may not practice in the healthcare professions in Illinois. And that is so by operation of law, notwithstanding any other provision of law to the contrary, and without regard to the individualized factors that might go into determining whether someone is fit to practice. And I think the confusion over whether the statute is retroactive or prospective stems from a misreading of Landgraf. Landgraf provides a test for the Court to determine what the legislature intended, and then if the legislature intended for a statute to apply retroactively, whether that retroactive application is constitutional. There does not need to be unequivocal language that the legislature intended the statute to apply retroactively, because it didn't intend that, so that part of the Landgraf test simply does not matter here. The legislature wanted the statute to apply after August 20, 2011, and it set new eligibility requirements from that date forward for practicing in these professions in the state. And it is in that context that the use of the word has been becomes critical, because the legislature uses that phrase when it intends for the person's status to be drawn into the statute, whether that status was obtained before or after the statute's effective date. And just to put a finer point on it, the United States Supreme Court in Landgraf, which this Court largely follows, made clear that a retroactive statute is one that adds new consequences to completed events. So the question here is whether this is impacting completed events. The statute here does not make anything unlawful that was previously lawful. It does not impact the plaintiff's convictions in any way. It does not increase their sentence in any way. And as Justice Thomas pointed out, it does not do anything to their practice in these professions before August 20, 2011. Indeed, if it did, that would be a retroactive application, because then that would be saying that these plaintiffs engaged in the unauthorized practice of medicine, and that would be adding new consequences to a completed event, their practice before August 20, 2011. And because the statute here does not impose those consequences, it does not operate retroactively. Rather, the statute merely draws upon an antecedent event, a conviction to operate in the future. It places present and future consequences on present and future conduct. The conduct that the statute seeks to regulate is the practice in these professions after August 20, 2011. And the eligibility to practice after that date in the future is not a completed event. As this Court noted in Abrahamson, to be eligible to practice in professions, one must not only meet the educational and training requirements, but also must possess good moral character. And so by passing the statute, the General Assembly made clear that people who have these convictions on their record are per se unfit, do not hold the good moral character to practice in these professions any longer. And to be sure, the statute is a blunt instrument for protecting the public. There might be tough cases at the margins, this might be an unwise or maybe not the best means to meet its ends, but that is a choice the legislature gets to make. And this choice has been being made since before the U.S. Supreme Court's decision in United States v. Hawker in 1898, where the Court clearly said that evidence of a conviction can be evidence of character, and the legislature can use that fact alone to bar people from practicing in the professions. And that certainly might feel harsh to the individual plaintiffs, but the test here is really an objective one, whether this is rationally related to a legitimate government purpose, and that clearly is, in fact, the plaintiffs aren't even making that argument in this case. Ms. Warshorn? Yes. The plaintiffs argue that there's a vested right to keep their licenses, whereas the Department has already determined that their licenses would not be revoked as a consequence of their criminal convictions. I disagree that there's a vested right here. To be sure, they may well have a vested right against the Department coming after them again to discipline them for their conviction. The time has passed for that in these circumstances. But, as I explained in my brief, there is no vested right to avoid the eligibility requirements for holding a license. So, you know, if the Court were to see a case where CLE requirements, you know, came in, and someone was to argue, well, you know, the time has passed for me to have to do CLE requirements. I have a vested right in my license to not have to undergo those kind of additional training. There's just simply no vested right in being eligible currently to practice. That is a question that, you know, gets asked every time someone renews their license. You know, is this person still eligible? Did they meet the CLE requirements? So there's no vested right in someone's eligibility. And because of that, they've conceded there's no vested right in their license. So there just simply is no vested right at issue in this case. What about the Allied Bridge case? You know, Your Honor, that really was a case about separation of powers. It stems back to a line of cases from the United States Supreme Court that says a legislature cannot undo a court's verdict. It can't do that. But that's not what's happening in this case. The legislature is not undoing the prior disciplinary decisions of the Department, because, again, to do that would be acting sort of retroactively by saying we're going back in time and disciplining you for that prior conduct. What the legislature is saying is that from this day forward, here are the eligibility requirements for practicing in that profession. And that's just, you know, different from what the Allied Bridge case is dealing with. The legislature is not changing any prior decision about how much discipline should have been imposed against these plaintiffs. Rather, it's enacting a universal rule of applicability about the eligibility requirements for practicing. And whatever disciplinary decision was made within the Department's discretion is not being affected. Nothing is reaching back and changing that. It's saying from this point forward, this rule is being applied to all health care workers. May I ask a question about the procedural due process argument? The statute appears to automatically be triggered that the license shall be revoked by operation of law without a hearing, based upon, among other things, a conviction of battery against a patient in the course of patient care or treatment. How is that proved up? Is there a certified copy of battery? And so how do you, is it shown that this was a patient, number one, and two, that it was during patient treatment? Sure. The Department has enacted regulations that flesh out the process to carry out its sort of mandate in the statute of revoking the license. And under that process, the Department sends notice to the doctor and says, we've learned that you have a conviction for one of these offenses. You have 20 days to respond in writing with supporting documentation to let us know whether you fit within any of the exceptions to the statute. And if the doctor can do that by submitting possibly an affidavit from the patient saying, I wasn't a patient during the course of care, or some other evidence that shows, you know, this is not the kind of conviction that falls under that statute. So it's not that it's been overruled or vacated or any of those kind of exceptions? Those two. Those two. So there's an opportunity to debate the issues of whether or not this was, in fact, in terms of patient care? Yeah. There's an opportunity for a paper hearing. And, you know, if it turns out that there's a question about whether, you know, that really truly was in the course of patient care treatment, and the doctor disagrees with the Department's final decision, they have safety valves. They could file for a writ of cert and ask the Court to intervene or file a declaratory judgment action saying, you know, the statute's being inappropriately applied to me. So there are ways. So within the regulations themselves, there's no opportunity for a hearing, or put it a different way, there's no burden on the State to show that this conviction arose about a patient or in the patient care. There's nothing within the process itself for those facts to be meted out. It would only have to be with the doctor filing a declaration of some sort. There is a paper hearing where that kind of evidence can be presented, and the Department can then make its determination based on the evidence that's presented to it. But short of that, they would have to go to court to develop, you know, further. Maybe there would be a circumstance where there is a question, but mostly it can be dealt with on the papers, because either you were convicted, you know, of a battery and it involved a patient during treatment. If you hit the patient in the parking lot, I think that was one of the examples, and it has nothing to do with their treatment. If you were convicted, you can say that in your affidavit. I did commit a battery, but it was not against a patient during the course of treatment, and here's why. And then the Department can consider that evidence. And if the Department rejects that and says, we don't agree, whatever they say, then administrative review is the opportunity to dispute this? They can file a writ of certiorari. But, counsel, on the administrative review question, there's not administrative review within the agency? That's correct. In front of an administrative law judge? That's correct. And you've twice used the phrase, paper hearing. Simply a review of papers that are submitted by the physician? There's not a face-to-face hearing? No, there is not. It's just on the papers. And generally, the question is whether the conviction was reversed, vacated, otherwise set aside, whether a pardon is granted. And those are things that easily can be resolved on the paper. And as Justice Thomas noted, when the risk of a revocation being erroneous is so low, in the balance of Matthews v. Eldridge, and the importance of the interest being sought is so high, this Court has had cases where the fact of conviction, a paper hearing, is enough to be able to uphold the statute. Touching briefly on their ex post facto argument, to survive on this kind of claim, they have to show both that the statute is retroactive and constitutes punishment. And because it's not retroactive, that's dispositive on this claim as well. But turning to the question of whether this is punishment, they've pointed to no evidence of any punitive intent on the part of the legislature, and the Court applies the Kennedy factors to determine whether, despite the lack of intent, whether the statute has a punitive effect. And applying those factors here, they've conceded that there's no affirmative disability or restraint by way of the statute, because it's not tantamount to imprisonment. They've also conceded that regulating a license is not traditionally viewed as punishment. So the questions here are whether there's an intent requirement in the statute, and there is not. The statute only requires a conviction. Whether the conviction underlying that requires intent is another question, as this Court's decision in People v. Malchow indicated. Furthermore, deterrence is not the primary purpose of the statute. It's to protect the public. And there's a suggestion that if the plaintiffs had known that the statute was, you know, possible, that they would have acted differently. But the fact that their license could have been revoked under the Medical Practice Act and that they possibly could face a prison term belies that suggestion. Could you address the issue about the vested right in the time defense?  I think, Your Honor, I had mentioned that there is no vested – they may well have a vested right in not being disciplined again by the Department or having discipline be considered under the Medical Practice Act, the Department acting in its discretion. But they have no vested right in avoiding the eligibility requirements for licensure. So, put another way, no one can say, you know, I have a vested right, so I don't have to meet that educational requirement. I have a vested right, so I don't have to meet that training requirement. The eligibility requirements for a license, there is no vested right in avoiding those. So they have a right possibly to avoid discipline, which is different than what the statute is doing, for those convictions again. That would pose a res judicata problem probably as well. But they have no vested right in not following the basic eligibility requirements for holding the license. I see my time is up, or almost up. Almost up. Almost up. Does the Court have any more questions? Didn't appear to. Okay. Then I would ask that you please affirm the judgment of the appellate court, and I thank you very much for your time today. Thank you. To be clear, we are not arguing that there is a vested right, that Dr. Jafari has a vested right to be free from additional licensure requirements. That's not why I'm here. I'm here, and defendants concede, which is extremely important, that Dr. Jafari and others have a vested right to a time defense. And that vested right was to be free from discipline, from Dr. Jafari's 1999 alleged incident and 2001 misdemeanor. Defendants concede that. I think the Court, we need to really make a distinction because there can be some confusion about what defendant is arguing with respect to the prospective application based on antecedent events and the retroactivity analysis. And simply put, now that we all are in agreement that there's a vested right to a time defense, this is what, and if you look into the Supreme Court, this Court's decision is an MEH versus LH, a case involving where adults sued their father for childhood sexual abuse and false imprisonment. That case dealt with a 12-year statute of repose that barred the claims. The principle of the vested rights time defense was acknowledged in that the Court said once statute of repose has distinguished the cause of action, defendant had a vested right under due process of the state constitution to invoke statutory repose period even after the repose period was abolished by the legislature. And defendants are claiming we have that right, and I think it's important to acknowledge that. Now, one of the things we also have to do is look at the intent of the legislature requiring clear intent that assures that Congress itself has affirmatively considered the potential unfairness of the retroactive application and determined that is an acceptable price to pay for countervailing benefits. So essentially, has the legislature looked at clearly on the statute the consequences of it, and it has not. And if you look at the case law, you know, I think defendants' main argument, what I'm hearing is that if you look at the case law with respect to the prospective analysis based on antecedent events, it clearly does not involve any vested rights. And, for example, the Winooski case where defendants or plaintiffs, I should say, sought medical records that defendants created after the passage of the statute, allowing those records to be confidential. This is a case cited by defendants. The Court rejected that it had a retroactive impact, but merely said it was prospective based on antecedent events. The Court acknowledged that case did not involve a plaintiff who had or a defendant who had a vested right. The same with Weinglatt, the same with Gersh, and I think my favorite is Joe v. IDFPR. If you look at that case, this is another case establishing eligibility requirements that defendants are relying on for, you know, they seem to, this retroactive application, I'll get to that as well, but they're relying on this prospective analysis based on antecedent events. And the case is, you know, the Court held in another case establishing eligibility requirements, the Court held that in order for a statute to have a retroactive effect, it must reach back and interfere with a vested right. So here's the distinguishing factor that I think I'll conclude on. We have the defendant's argument with respect to the prospective analysis, but there's one huge glaring admission. There's one big hole, and that big hole has to deal with the law states that a statute or any law for that matter has a retroactive impact if it creates new legal consequences or if it impairs a vested right or if it impairs rights to a party, rights a party had possessed when he acted. Dr. Jafari had a right to be free from discipline under the Medical Practice Act after 2004. Defendants do not contest that. They're merely saying because this is a separate amendment, IDFPR can completely yank his license for another reason, but the expectation, the fundamental principles of finality, of predictability would be completely stripped away if this Court allows IDFPR to revoke Dr. Jafari's license. Not only that, it would interfere with what this Court has recognized and established not only in MEH but in other cases, his vested right to a time defense. Unless there are any other questions, I'm going to pass it to my opponent. Thank you. Firstly, the term eligibility requirement has been used in the briefs. It's been stated today. They're revoking licenses. Revoking is a discipline. It's defined in the very statute that this legislation is in. It's defined in the Medical Practice Act. As it relates to existing license holders, that's a discipline. And whether they want to call it an eligibility requirement, term it any way they want, that red herring doesn't affect the allied case. His right to practice medicine, Dr. Kalaludin's right to practice medicine, has been established. Whether the subsequent legislation wants to call it eligibility is of no moment to my client. And in fact, I guess I need to stress, this isn't eligibility to these physicians. This is a discipline. The statute of limitations said if you're going to discipline a physician, you've got a time period. It's ten years later for some of these physicians. And this new legislation in a different act isn't doing anything but disciplining these licenses. Last comment I'll make, and I'm sure counsel will cover it. This paper hearing, this is just made up today, I think. It doesn't exist anywhere. The notice said if you weren't convicted of these things, let us know. That's your hearing. And mostly paper alone and regulations and affidavits. This doesn't exist in this statute. You're on the list. You're done. I find this law riddled with problems. Thank you. When the state talks about these things can be resolved on paper, I believe they are suggesting that the state can resolve the facts. If there is nothing to resolve in a statutory scheme, no hearing is required. Connecticut v. Doe. If there are things to resolve in a statutory scheme, the state cannot resolve them unilaterally. Goss v. Lopez. Thank you very much, Your Honor. Thank you. Cases number 116023116163, 116190. Insiglio v. Department of Financial and Professional Regulations et al. Consolidated for oral argument. Will be taken under advisement as agenda number six. Stomach, Mr. Coughlin, Mr. Doherty, Mr. Whitman, thank you for your arguments today. You are excused.